UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANKICA ALILOVIC, | CASE NO. 1:12CV323 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Ankica Alilovic seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

**I.**     **PROCEDURAL AND FACTUAL HISTORY**

On June 21, 2007, Plaintiff filed her application for benefits alleging disability beginning August 1, 2003. ECF Dkt. #12 at 150-153. The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 52-53. On May 21, 2008, Plaintiff filed a request for an administrative hearing. *Id.* at 72. On March 22, 2010, an ALJ conducted an administrative hearing where Plaintiff, through her seventeen year-old son acting as her interpreter, and vocational expert, Ted Macy ("VE") offered testimony. *Id.* at 30-49. On July 27, 2010, the ALJ issued a Decision denying benefits. *Id.* at 17-25. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 1-3.

On February 9, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On August 16, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #17. On September 28, 2012, Defendant filed a brief on the merits. ECF Dkt. #18. No reply brief was filed.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from affective disorder, diabetes, and hypertension, which qualified as severe impairments under 20 C.F.R. 416.920(c). *Id.* at 19. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 416.920(d), 416.925, 416.926). *Id*.

The ALJ ultimately concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.1567(b), except that Plaintiff can occasionally stoop, kneel, crouch, and crawl, and can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. Plaintiff can perform work involving simple repetitive tasks in a low stress environment, which has limited interactions with the general public. In addition, the ALJ found that Plaintiff speaks rudimentary English well enough to understand simple instructions from supervisors. *Id.* at 21. As a consequence, the ALJ found that Plaintiff could perform her past relevant work as a cleaner/housekeeper/maid, and, therefore, Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. *Id.* at 24.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable

mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

In this appeal, Plaintiff contends that the AJL failed to consider her obesity, and the effect that it has on her ability to stand and walk for prolonged periods of time, when he formulated her RFC. Plaintiff also contends that the ALJ did not properly assess Plaintiff's credibility with respect to her allegations of debilitating pain. Finally, Plaintiff contends that she suffered prejudice as a result of the use of her seventeen year-old son as an interpreter at the hearing.

Plaintiff was forty-four years of age on the date of the hearing. Plaintiff testified that she was either 5'3" or 5'5"[1], and weighed 224 pounds. ECF Dkt. #12 at 40. She graduated from high school in her native country, Bosnia. *Id.* at 44. Plaintiff previously worked as a housekeeper at a Holiday Inn in Hudson, Ohio, and her supervisor communicated with her in English.[2]

Plaintiff testified that she has pain and cramping in her legs due to varicose veins. *Id.* at 35. Her legs are swollen all of the time, and the pain often affects her ability to walk. *Id.* at 36. She testified that she "walk[s] a little and she sit[s] a little." *Id.* at 37. When she sits, she puts her feet up to improve her circulation. *Id.* at 38.

Plaintiff also suffers from diabetes and high blood pressure. *Id.* at 38. As a result, Plaintiff sometimes has problems with the pressure in her eyes. *Id.* at 39. She has blurred vision two or three times a day. She testified that her blood sugar rises and falls randomly. *Id.* at 40. When her vision is blurred, she lies down and closes her eyes for fifteen to twenty minutes and the problem typically resolves itself. Plaintiff also has numbness and tingling in her left hand, which comes and goes, and swelling around both hands and wrists. Using her left hand increases the swelling. She does not do anything during the day because of the pain in her hand. *Id.* at 39.

---

[1] At the hearing, Plaintiff testified that she was not certain about her height. Medical records indicate that she was 5'8". ECF Dkt. #12 at 469.

[2] Plaintiff was terminated from her housekeeping position at the Holiday Inn as a result of poor performance reviews in April of 2002. ECF Dkt. #12 at 314.

Plaintiff has low energy, which she attributes to the medication she takes. *Id.* at 40. Plaintiff denied that she was depressed, but conceded to crying occasionally for no reason. She testified that she sometimes cries because she can no longer work due to her lack of energy.

In response to the question, "What do you do all day," Plaintiff responded, "We drink coffee and [her husband] goes to work and comes back and brings back the children from school. He makes breakfast and I drink the medication." *Id.* at 42. Plaintiff testified that she does not go out alone because she becomes dizzy, and she is afraid that she might fall. Plaintiff does not drive but she performs "a little bit" of housework "sometimes." *Id.* When asked for an example, Plaintiff testified that she "pick[s] up papers in [her] yard." *Id.* at 43. Plaintiff does not cook or vacuum.

According to the medical records, Plaintiff began treatment for diabetes and high blood pressure at Twinsburg Family Practice in 2003.[3] Her treatment continued into 2004, and she regularly complained of dizziness, nausea, fatigue, leg cramps, and general pain. *Id.* at 315-328. From 2004 to 2005, Plaintiff was treated by Inna Krasnyansky, M.D.[4] for all health issues related to her diabetes. *Id.* at 508-537.

On December 9, 2005, Plaintiff presented to the Hillcrest Hospital Emergency Department with complaints of abdominal pain. *Id.* at 329. The pain was localized to her left upper quadrant and it was intermittent and unpredictable in onset. *Id.* at 334. An abdominal ultrasound showed fatty infiltration of the liver and pancreas without acute process. *Id.* at 341. Plaintiff was seen at Cleveland Clinic for a follow-up on December 12, 2005. She discussed controlling her diabetes with Adriana Ioachimescu, M.D. At that visit Plaintiff was still experiencing abdominal pain along with burning pain with urination. *Id.* at 350. Plaintiff reported that she was not following any special diet and was not engaging in any exercise. However, at that appointment, Plaintiff reported having no difficulties performing or completing routine daily living activities. *Id.* She was instructed to

---

[3]Plaintiff attended appointments on September 11, September 24, October 3, and November 5, 2003, and January 5, January 12, March 15, March 16, and April 5, 2004. ECF Dkt. #12 at 315-328.

[4]She saw Dr. Krasnyansky on May 8, June 4, July 17, August 28, October 9, November 7, 2004, and January 25, 2005.

increase Avandamet (Rosiglitazone and Metformin) to the maximum dosage, and add Glucotrol for her diabetes. *Id.* at 352.

Plaintiff sought treatment for her diabetes and hypertension at St. Vincent Charity Hospital in Solon, Ohio in August of 2007. She reported that she was not taking any medication at the time. *Id.* at 376. She was diagnosed with hypertension, diabetes mellitus, edema, and obesity, and prescribed Januvia and Metformin for her diabetes, and Diovan HTC for her hypertension . *Id.* at 379.

Plaintiff was seen by Eulogio Sioson, M.D. for a one-time disability evaluation at the request of the agency on October 13, 2007. *Id.* at 380-387. Plaintiff stated that her medical problems at that time included diabetes, back pain, bowel problems, and depression. *Id.* at 385. In regards to the diabetes, Plaintiff described experiencing blurry vision, and numbness in her hands and feet. She stated that she had non-radiating low back pain and pain in her left leg after walking ten minutes, going up and down a flight of stairs, standing ten minutes, and sitting for twenty to thirty minutes. A history of irritable bowel with abdominal cramping and depression was also noted. Dr. Sioson noted that the Plaintiff had elevated blood pressure. He also stated that she had venous varicosities in her legs and left inner thigh with no stasis. Dr. Sioson opined that Plaintiff has peripheral neuropathy as a result of her diabetes. *Id.* at 386.

Plaintiff underwent a psychological consultative examination performed by J. Joseph Konieczny, Ph.D. on October 19, 2007. *Id.* at 388-392. Dr. Konieczny diagnosed Plaintiff with Major Depressive Disorder. *Id.* at 391. It was his opinion that Plaintiff's ability to concentrate and to attend to tasks showed indications of mild impairment. Similarly, her ability to understand and to follow directions showed indications of mild impairment. Her ability to withstand stress and pressure showed indications of moderate to severe impairments. *Id.* at 391. Dr. Konieczny opined that Plaintiff's symptom severity and functional severity were both at a GAF level of 46. *Id.* at 392.

On November 2, 2007, state reviewing physician Catherine Flynn, Psy.D. rated Plaintiff's functioning as moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to sustain an ordinary routine without any special supervision, the ability to maintain socially appropriate behavior and to adhere to basic

standards of neatness and cleanliness, and her ability to respond appropriately to changes in the work setting. *Id.* at 394-395. Regarding sustained concentration and persistence, Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was also rated as moderately limited. *Id.* at 395. Plaintiff reported improvement in her mood with the use of an anti-depressant in November 2007. *Id.* at 430.

As to Plaintiff's physical limitations, state reviewing physician Anton Freihofner, M.D. opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry 10 pounds, stand/and or walk about six hours in an eight hour workday, and sit about six hours in an eight-hour workday. *Id.* at 413. Dr. Freihofner also noted that Plaintiff lost balance trying to heel/toe walk and rose from a 1/4 squat with back pain. Further, there was moderate mid and lower back tenderness and muscle testing was affected by pain.

Plaintiff sought treatment for all of her health issues with Jayanthi Algarsamy, M.D. beginning on August 22, 2007.[5] At that time, Plaintiff's main issues were diabetes, high blood pressure, edema and obesity. *Id.* at 372-379. She complained of tingling and numbness in her hands and lower extremities, as well as depression. *Id.* at 377. Treatment largely included management of diabetes through medication. Plaintiff regularly complained of trouble sleeping, anxiety and cramping in legs and abdomen. Plaintiff's weight varied anywhere between 231 pounds to 242 pounds. *Id.* at 325; 386; 443.

Dr. Algarsamy referred Plaintiff to Patricia Duggan, MD at Vascular Interventions & Venous Associates for treatment of her varicose veins. *Id.* at 538-546. On June 20, 2008, Plaintiff presented to the clinic with symptoms that included aching and throbbing in her legs, calf cramping, and veins that were hot and painful to the touch. *Id.* at 538. Other symptoms included weakness and numbness in the arms, hands, legs, and feet. She also experienced dizziness. *Id.* at 539. Plaintiff reported that she was awakened at nighttime several times a week to cramping so severe that she had to get out

---

[5]Plaintiff saw Dr. Algarsamy on September 19, October 24, November 27, 2007, January 2, February 6, April 8, June 10, July 22, September 23, November 25, 2008, January 27, and March 26, 2009. *Id.* at 443-500.

of bed to walk around in order to relieve the pain. *Id.* at 545. Dr. Duggan noted non-pitting malleolar edema over the right ankle. She recommended endovenous laser ablation for treatment of Plaintiff's painful varicose veins.

At her March 26, 2009 appointment with Dr. Algarsamy, Plaintiff reported discontinuing her anti-depressant due to difficulty breathing. Despite discontinuing her medication, Plaintiff denied experiencing depression or fatigue. *Id.* at 469. Dr. Algarsamy's medical notes reflect that Plaintiff refused to undergo a sleep study or stress test. *Id.*

It is important to note that none of Plaintiff's physicians opined that Plaintiff's impairments prevented her from full-time work. To the contrary, there is nothing in the medical records that demonstrate that her impairments, when properly treated, would cause such a limitation.

In her first argument, Plaintiff contends that the ALJ failed to consider her obesity when he formulated her RFC. SSA regulations require administrative law judges to consider the effects of obesity as part of their adjudication of a claim for benefits. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011). SSR 02–lp recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02–1p, 2000 WL 628049, at *6. However, SSR 02–lp does not mandate a particular mode of analysis for an obese disability claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir.2006). Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting SSR 02-1p).

In *Young v. Comm'r of Soc. Sec.*, 2011 WL 2182869, *7 (N.D.Ohio), the court explained it is "up to the claimant to furnish medical and other evidence which the 'Social Security Administration can use to reach conclusions about [a claimant's] medical impairment and its effect on [his] ability to work on a sustained basis.' " *Id.* (quoting 20 C.F.R. § 404.1512(a)). However, Plaintiff does not cite to any evidence in the medical record that suggests that her obesity has increased the severity of her other limitations. Given the absence of any evidence that Plaintiff's obesity has increased the severity of her other limitations, the record demonstrates that the ALJ

-8-

sufficiently considered plaintiff's obesity in formulating her RFC.  See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.2009).  Accordingly, Plaintiff's first claim has no merit.

Next, in her second argument, Plaintiff argues that the ALJ failed to properly assess her credibility when he rejected her claims of debilitating pain.  With respect to Plaintiff's testimony at the hearing, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

ECF Dkt. #12 at 22.

When disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, as Plaintiff appears to concede here, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination.  *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that Plaintiff's impairments could be expected to produce pain and symptoms but not the kind of debilitating pain and symptoms that Plaintiff alleged.  It should be noted that the ALJ did not totally reject Plaintiff's allegations, but rather, he determined that

Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record.

An ALJ is not required to accept a plaintiff's own testimony regarding her pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). In this case, the medical records contravene Plaintiff's allegations of debilitating pain and symptoms. For instance, in December of 2005, Plaintiff reported that the symptoms of her diabetes did not prevent her from performing her daily activities. ECF Dkt. #12 at 350. Moreover, the medical records are replete with examples of Plaintiff unilaterally discontinuing medication for her diabetes, and failing to comply with dietary restrictions intended to control her diabetes. Accordingly, Plaintiff's second argument is not well-taken.

Finally, in her third argument, Plaintiff contends that she suffered prejudice as a result of the use of her seventeen year-old son as an interpreter at the hearing, due to the unavailability of an SSA interpreter. It is important to note that Plaintiff's counsel suggested that the ALJ use Plaintiff's son as an interpreter at the hearing, because her son had acted as an interpreter for his mother in the past, including during medical appointments. The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") at I–2–6–10 addresses the use of foreign language interpreters:

> If a claimant has difficulty understanding or communicating in English, the ALJ will ensure that an interpreter, fluent in both English and a language in which the claimant is proficient, is present throughout the hearing.

http://www.socialsecurity.gov/OP Home/hallex/I–02/I–2–6–10.html

HALLEX is an "internal guidance tool" for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir.2008)(this manual is "not binding on this court.") "However, traditional notions of due process would suggest that without an interpreter, a claimant unable to communicate in English would hardly receive 'a full hearing ... in accordance with the beneficient purposes of the [Social Security] Act.'" *Martinez v. Astrue*, 2009 WL 840661 at *2 (D.Conn.2009) (citing *Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir.1982)).

-10-

In the context of immigration hearings, to succeed on a due process claim of inadequate translation, a petitioner must show that a better translation would have affected the outcome of the hearing. *Acewicz v. U.S. I.N.S.*, 984 F.2d 1056, 1063 (9th Cir.1993) (citing *Tejeda–Mata v. INS*, 626 F.2d 721, 727 (9th Cir.1980). Evidence of incompetent translation claims includes direct evidence of incorrectly translated words, unresponsive answers by the witness, and a witness's apparent difficulty understanding what is said to him. *Perez–Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir.2003) (citations omitted) (finding both incompetent translation where transcript showed that alien's responses evidenced a lack of understanding of the questions and resulting prejudice deprived alien of due process).

Most importantly, to prevail on an incompetent translation claim, a party must show prejudice. "[T]he standard is whether 'a better translation would have made a difference in the outcome of the hearing.'" *Id.* at 780 (citing *Acewicz*, 984 F.2d at 1063). Here, Plaintiff contends that her seventeen year-old son was an inappropriate translator. However, the medical record reflects that Plaintiff's son acted as an interpreter for Plaintiff at some of her medical appointments, and, as a consequence, had an understanding of her medical problems. Furthermore, Plaintiff, in her brief, fails to cite to any portion of the hearing where her son misinterpreted her responses or mischaracterized her impairments. Accordingly, Plaintiff has failed to demonstrate that she suffered any prejudice as a result of the use of her son as an interpreter at the hearing, and, as a result, her third argument must fail.

VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED and Plaintiff's Complaint is dismissed in its entirety with prejudice.

DATE: November 14, 2012

    */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE